UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES OWENS, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 01-2244 (JDB) |
| REPUBLIC OF SUDAN, et al., | |
| Defendants. | |
| JUDITH ABASI MWILA, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 08-1377 (JDB) |
| ISLAMIC REPUBLIC OF IRAN, et al., | |
| Defendants. | |
| RIZWAN KHALIQ, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 10-0356 (JDB) |
| REPUBLIC OF SUDAN, et al., | |
| Defendants. | |

AMENDED MEMORANDUM OPINION

The plaintiffs in these actions ("Plaintiffs") are victims and surviving family members of the 1998 terrorist bombings of U.S. embassies in Kenya and Tanzania.  In 2014, this Court awarded Plaintiffs judgments, totaling almost $1 billion, against Iran for its role in those bombings.  Six years later, as part of their efforts to satisfy those judgments, Plaintiffs sought, and this Court granted, writs of attachment against almost $10 million in blocked funds ("the Funds") connected

to Iran's purchase of a petroleum tanker.  The government, however, had already filed a civil forfeiture action in this District (the "Forfeiture Action") against those Funds three weeks prior. That case was assigned to Judge Boasberg.  When the government learned of Plaintiffs' writs, it requested and received permission to intervene in the instant Funds proceeding. The parties subsequently agreed that the undersigned judge should resolve certain issues concerning the writs before the Forfeiture Action proceeded further.

While briefing on those issues was underway, a different set of terrorist-victim plaintiffs ("the Levin plaintiffs") obtained writs against the Funds in both this District and the Southern District of New York.  The government then sought to sever and reassign all existing Funds-related actions to Judge Boasberg for coordinated proceedings.  See Gov't's Mot. to Sever and Reassign ("Gov't's Br.") [ECF No. 480] at 1–2, 9.  Plaintiffs oppose this request.  See Pls.' Mem. of Law in Opp'n to Gov't's Mot. to Sever and Reassign ("Pls.' Opp'n") [ECF No. 484].  For the following reasons, the Court will grant the government's motion to sever and reassign, and transfer Plaintiffs' Funds-related actions to Judge Boasberg.[1]

## Background

In 2019, Taif Mining, a front company created to evade U.S. sanctions on Iran, attempted to wire almost $10 million through Wells Fargo Bank to purchase a petroleum tanker on behalf of Iran.  Wells Fargo blocked that transfer, and on May 1, 2020, the government filed its Forfeiture

---

[1] Plaintiffs' cases were previously consolidated "for purposes of discovery and trial on the issue of liability only."  See Owens v. Republic of Sudan, Civ. A. No. 01-2244 (JDB), ECF No. 160 (emphasis added); see also Mwila v. Islamic Republic of Iran, Civ. A. No. 08-1377 (JDB), ECF No. 13; Khaliq v. Republic of Sudan, Civ. A. No. 10-0356 (JDB), ECF No. 23.  The plaintiffs in Owens, Mwila, and Khaliq, therefore, initially filed their motion for a writ of attachment, and their motion to condemn and recover, in each of their respective cases.  See Owens, ECF Nos. 450, 464; Mwila, ECF Nos. 159, 167; Khaliq, ECF Nos. 110, 119.  However, although the parties never formally moved to consolidate the three actions for the purpose of resolving the writs-related issues, they eventually began treating these actions in a consolidated fashion by docketing all writs-related filings in Owens only.  Hence, while the government's motion to sever and reassign has only been docketed in the Owens action, the Court will effectuate the motion in the Mwila and Khaliq actions, too, because all issues related to the writs have been jointly litigated by Plaintiffs thus far.  Unless otherwise specified, all docket entries cited in this Amended Memorandum Opinion refer to the Owens docket.

Action in this District against the Funds.  United States v. $2,340,000.00 Associated with Petroleum Tanker Nautic, Civ. A. No. 20-1139 (JEB) (D.D.C.) ("Forfeiture Action").  That same day the government obtained a warrant to arrest the Funds.  Id., ECF No. 3.  On May 22, 2020, Plaintiffs sought in their respective actions to attach and execute upon the Funds pursuant to the Foreign Sovereign Immunities Act ("FSIA") and the Terrorism Risk Insurance Act ("TRIA") in order to satisfy their judgments against Iran.  Mot. for Writ of Attachment [ECF No. 450].  This Court granted Plaintiffs' writs three days later.  Order (May 25, 2020) [ECF No. 451].  After serving their writs on Wells Fargo, Plaintiffs filed a motion to condemn and recover on June 29, 2020, requesting an order that would direct Wells Fargo to deliver them the Funds.  Pls.' Expedited Mot. for Condemnation and Recovery Against Garnishee Wells Fargo Bank, N.A. [ECF No. 464].

After learning of Plaintiffs' writs, the government sought, with Plaintiffs' consent, to intervene in this proceeding.  Gov't's Consent Mot. to Intervene [ECF No. 461].  The Court granted that request and directed the parties to file a joint status report regarding further proceedings.  Order (July 6, 2020) [ECF No. 462].  The parties then proposed to stay the Forfeiture Action until this Court had resolved two specific issues: (1) "the factual predicate underpinning the Court's May 25, 2020 Order issuing the writs of attachment against Wells Fargo"; and (2) whether this Court may or, alternatively, should rule on Plaintiffs' motion to condemn in light of the pending Forfeiture Action.  Joint Status Report (July 10, 2020) [ECF No. 467].  This Court adopted the parties' proposal, Min. Order (July 13, 2020), and Judge Boasberg granted their request for a stay, Forfeiture Action, Min. Order (Aug. 5, 2020).  The government then moved on August 17, 2020 to quash Plaintiffs' writs, or alternatively, for reconsideration of the writs.  Gov't's Mot. to Quash Writs or for Recons. [ECF No. 473].  The government also opposed Plaintiffs' motion to condemn. See id. at 3.

When briefing on these issues was almost complete, the government discovered that another group of terrorist-bombing victims, the Levin plaintiffs, had applied in this District and in the Southern District of New York for writs directed to the Funds.  See Gov't Br. at 2; see also Levin v. Islamic Republic of Iran, Civ. A. No. 05-2494 (RDM) (D.D.C.) ("DDC Levin Action"); Levin v. Bank of N.Y., Civ. A. No. 09-5900 (JPO) (S.D.N.Y.) ("SDNY Levin Action").  The government subsequently determined that it would be "prudent to gather all [Funds-related] cases before a single judge" and filed a motion in this Court to sever and reassign Plaintiffs' Funds proceeding to Judge Boasberg, who presided over the earliest Funds-related case, the Forfeiture Action.  Gov't Br. at 2–3.  The government also moved to reassign the DDC Levin action and to transfer the SDNY Levin action to Judge Boasberg as well.  Id. at 3.

The DDC Levin Action was reassigned to Judge Boasberg with the Levin plaintiffs' consent on October 21, 2020.  DDC Levin Action, ECF No. 40.  The parties there agreed that the Levin plaintiffs could obtain and serve a writ of attachment against the Funds without prejudice to the government seeking to quash that writ.  Id., ECF No. 37, at 2.  That writ was issued on October 29, 2020 and served on November 23, 2020.  Id., ECF Nos. 41, 42 & 43.  The government filed its motion to quash that writ on December 22, 2020, id., ECF No. 46, and briefing on the matter will conclude on February 26, 2021, id., Min. Order (Dec. 10, 2020).

The Levin plaintiffs, however, opposed the government's request to transfer their SDNY action to this District.  SDNY Levin Action, ECF No. 1342.  On August 11, 2020, the Levin plaintiffs moved for a writ of execution against the Funds in the Southern District of New York.  Id., ECF No. 1309.  The district court granted that motion on September 15, 2020, but had no cause to address whether the Funds were subject to execution under FSIA or TRIA.  Id., ECF No. 1324.  After the government intervened, the parties jointly stipulated that Wells Fargo had no obligation

to deliver the Funds to anyone by virtue of being served that writ.  Id., ECF No. 1338.  Briefing on the government's transfer motion concluded on December 7, 2020, and a ruling has not yet been issued.

Plaintiffs here oppose the government's motion to sever and reassign, and request that this Court decide the pending motions to quash and to condemn.  See Pls.' Opp'n at 1.  The government's motion to sever and reassign has been fully briefed and is now ripe for this Court's consideration.

## Legal Standard

Federal Rule of Civil Procedure 21 grants courts broad discretion to "sever any claim against a party."  Fed. R. Civ. P. 21; see also M.K. v. Tenet, 216 F.R.D. 133, 137 (D.D.C. 2002) ("The determination of a motion to sever is within the discretion of the trial court.").  A court "may sever claims for the purpose of permitting transfer" to a different judge.  Dickerson v. Novartis Corp., 315 F.R.D. 18, 27 (S.D.N.Y. 2016) (citing Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968)).  To determine if severance is appropriate, courts typically consider "concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes," as well as "the potential for confusion, undue delay, or prejudice to any party."  See M.M.M. on behalf of J.M.A. v. Sessions, 319 F. Supp. 3d 290, 295 (D.D.C. 2018) (collecting cases); see also CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc., 896 F. Supp. 505, 506 (D. Md. 1995) ("A claim may be severed if it will serve the ends of justice and further the prompt and efficient disposition of the litigation.").

Local Civil Rule 40.5—commonly referred to as the "related case rule"—designates certain procedures for assigning related cases to the same judge for coordinated proceedings.  The rule "rests primarily on considerations of judicial economy."  Tripp v. Exec. Off. of the President,

196 F.R.D. 201, 202 (D.D.C. 2000); see also Singh v. McConville, 187 F. Supp. 3d 152, 154–55 (D.D.C. 2016) (describing the related case rule as an "exception . . . in the interest of judicial economy" to the rule that new cases are randomly assigned).  As relevant here, "[c]ivil, including miscellaneous, cases are deemed related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction."  Local Civ. R. 40.5(a)(3).  "Where the existence of related cases" is discovered "after the cases are assigned, the judge having the later-numbered case may transfer that case to the Calendar and Case Management Committee for reassignment to the judge having the earlier case."  Id. at (c)(2).  The Committee shall reassign the later-numbered case if "good cause exists."  Id.

## Analysis

The typical motion to reassign a related case involves a disagreement over whether two cases are, in fact, "related" under the rule.  But here, Plaintiffs do not contest that their Funds proceeding and the Forfeiture Action are related.  Indeed, both proceedings "relate to common property," i.e., the Funds; "involve common issues of fact," such as whether the Funds are the property of Iran; and "grow out of the same event or transaction," i.e., the blocking of the Funds.  See id. at (a)(3); see also Gov't's Br. at 8.  And the Forfeiture Action is the "earliest" related case "still pending on the merits in the District Court" because the government brought that Action three weeks before Plaintiffs filed in their actions to attach the Funds.  See Local Civ. R. 40.5(a)(3); see also Gov't's Br. at 8.[2]  The only dispute then is whether this Court should, in its discretion,

---

[2] Plaintiffs originally filed three separate damages actions against Iran in 2001, 2008, and 2010.  However, Plaintiffs do not argue that these filing dates dictate which case is considered the "earliest" related case under the rule.  And the government instead contends—with no objection from Plaintiffs—that the operative date is when "the earliest action concerning the Funds" was filed.  See Gov't's Br. at 8.  The government's logic makes sense here because severance results in the creation of separate cases that are treated as "discrete unit[s]" from one another.  See Wultz v. Islamic Republic of Iran, 762 F. Supp. 2d 18, 32–33 (D.D.C. 2011) (quoting Disparte v. Corp. Exec. Bd., 223 F.R.D. 7, 12 (D.D.C. 2004)); see also M.M.M., 319 F. Supp. 3d at 295 ("Severed claims become independent actions that

sever and reassign Plaintiffs' Funds-related claims to Judge Boasberg for coordinated proceedings. There are no other pending claims in Plaintiffs' cases, and thus the parties treat the questions of severance and reassignment as a single inquiry.  This Court will address the primary relevant considerations in turn.

### A.        Judicial Economy

The government argues that "formal coordination of all actions regarding th[e] Funds" would promote judicial economy by enabling a single judge to decide common questions of fact and law.  Gov't's Reply in Supp. of Mot. to Sever and Reassign ("Gov't's Reply") [ECF No. 487-1] at 6.  Although Plaintiffs insist that reassignment would be inefficient, see Pls.' Opp'n at 3, they ignore that the factual and legal questions concerning their writs are identical to those in the DDC Levin action, which has already been transferred to Judge Boasberg.  Plaintiffs do not suggest that there is any "daylight between the grounds for quashing the two Levin writs" and "the [w]rits issued here," see Gov't's Reply at 3, and thus, it is plain that having a single judge decide identical—and complex—issues of fact and law would conserve judicial resources.  See Singh, 187 F. Supp. 3d at 155, 157 (declining to allow cases "properly designated as related" to be heard by different judges because "it would waste judicial resources to have another court address the same factual issues") (quotation omitted); see also Lopez v. Council on Am.-Islamic Rels. Action Network, Inc., 741 F. Supp. 2d 222, 239 (D.D.C. 2010) (declining to reassign related case where reassignment "would save neither time nor effort").  These benefits would also extend into the appeals process because coordinated proceedings would "unify issues for consolidated appellate

---

proceed separately and result in separate judgments."); Abuhouran v. Nicklin, 764 F. Supp. 2d 130, 132 (D.D.C. 2011) (explaining that severing claims creates "separate cases").  Hence, because Plaintiffs' Funds-related claims, once severed, become independent cases, the Court will evaluate them as such when applying the related case rule.  The Court therefore agrees with the government that, in the unique circumstances here, the Forfeiture Action is the earliest related case because the complaint in that Action predated any filings in Plaintiffs' Funds cases by three weeks.

review." <u>See</u> Gov't's Br. at 10.

Plaintiffs respond that reassignment would "only waste judicial resources" because "the government concedes that [this Court] should rule on the government's pending Motion For Reconsideration," before "reassign[ing] [the] proceedings" to Judge Boasberg. <u>See</u> Pls.' Opp'n at 8. For starters, although the government has moved in the alternative for reconsideration of the writs, the primary relief it seeks is to quash the writs. <u>See</u> Gov't's Mot. to Quash Writs or for Recons. at 1–2. Thus, despite Plaintiffs' repeated attempts to characterize the government's pending motion as one for reconsideration, <u>see, e.g.</u>, Pls.' Opp'n at 3, the government aptly describes it as a motion to quash, <u>see</u> Gov't's Reply at 2 n.1.[3]

More fundamentally, however, Plaintiffs' argument misconstrues the government's reassignment request. The only "concession" that the government has made is that the question whether Plaintiffs' writs were properly issued should be resolved before the parties proceed with the Forfeiture Action. <u>See</u> Gov't's Br. at 3. The government does <u>not</u> concede that the undersigned judge should decide that question, and in fact, advocates just the opposite. <u>See id.</u> (requesting that the question "whether any of these writs [were] properly issued" be "addressed in a coordinated manner . . . by having all of the cases gathered before a single judge."). Hence, the government's proposal is not that this Court reassign proceedings <u>after</u> resolving the government's motion to quash, and in any event this Court sees no logic to that approach.

Plaintiffs also contend that it "would be equally inefficient" "to reassign this case before Your Honor resolves the pending Motion For Reconsideration" because that approach would allow "a new judge unfamiliar with this matter to reconsider Your Honor's initial order authorizing

---

[3] Notably, Plaintiffs never argued that the government could <u>only</u> seek reconsideration of the writs. Hence, by failing to object to the government's styling of its motion as a motion to quash, Plaintiffs have conceded this point. <u>See</u> <u>Stephenson v. Cox</u>, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("[W]hen a plaintiff files a response to a motion . . . but fails to address certain arguments made by the [other party], the court may treat those arguments as conceded.").

issuance of Plaintiffs' writs." Pls.' Opp'n at 10.  That is not true.  Although this Court's tenure with Plaintiffs' cases may be long, its involvement with the instant Funds proceeding—which raises distinct issues from Plaintiffs' prior damages actions—is relatively short.  This Court granted Plaintiffs' motion for writs of attachment in May before the government had intervened and offered its views.  The question whether those writs were properly issued and should be executed upon will now be addressed de novo by any rulings on the government's motion to quash and Plaintiffs' motion to condemn.  See Stern v. Islamic Republic of Iran, 73 F. Supp. 3d 46, 50 (D.D.C. 2014) (granting motion to quash writ by reviewing de novo whether the property was subject to attachment under FSIA).  Judge Boasberg is already familiar with the government's Forfeiture Action—in which Plaintiffs have asserted a claim, see Forfeiture Action, ECF No. 4— and must resolve the exact same writs-related issues in the DDC Levin Action regardless of this Court's decision to reassign.  Plaintiffs' concerns about Judge Boasberg's unfamiliarity with their decades-old cases are therefore misplaced.[4]

Finally, although the parties' briefing largely focuses on the pros and cons of coordinating Plaintiffs' Funds proceeding with the Levin actions, judicial economy is also served by formal coordination between this proceeding and the Forfeiture Action.  Given that both proceedings involve the same blocked Funds, it is likely—as Plaintiffs have even intimated—that the actions will involve some overlapping factual issues.  See, e.g., Pls.' Sealed Mem. of Law in Opp'n to the Gov't's Mot. to Quash Writs or for Reconsideration [ECF No. 476] at 8–9 (comparing the question in these actions whether the Funds "belong" to Iran to the question in the Forfeiture Action whether

---

[4] Plaintiffs also state that because "the government offers no assurances that briefing [on the government's motion to quash or Plaintiffs' motion to condemn] would not need to be renewed or resubmitted before a new judge," reassignment would "undo[] all of the work that has been done by the parties and Your Honor."  Pls.' Opp'n at 10.  However, following reassignment, those motions will remain pending before Judge Boasberg, and therefore, even if the parties' briefs had to be renewed or resubmitted, this Court does not understand how or why "all"—or even an appreciable amount—of the parties' work in researching and presenting the underlying issues would be undone.

the Funds are "linked to Iran's unlawful activity."). Hence, this Court finds that severance and reassignment would promote, not thwart, judicial economy.

### B.   Orderly and Efficient Resolution of Disputes

The government also argues that formal coordination of all Funds-related proceedings would "ensure that the merits of all parties' claims are heard while avoiding inconsistent rulings." Gov't's Br. at 10. In support of its position, the government invokes the doctrine of prior exclusive jurisdiction, which designates that in rem matters involving the same piece of property are typically heard by a single court. See id. at 9–10; see also, e.g., Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976) ("[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts."); Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 927 n.48 (D.C. Cir. 1984) ("[P]roceedings in rem are usually restricted to one forum."). The government contends that, at the very least, the "logic" of this doctrine supports its proposal that "the judge first exercising jurisdiction over the Funds should . . . coordinate the litigation regarding them." Gov't's Reply at 8. Plaintiffs instead focus on the merits of the jurisdictional argument and assert that "the government's fear of inconsistent rulings . . . [is] manufactured." See Pls.' Opp'n at 10.

The jurisdictional question is not before this Court on the instant motion and will instead be resolved by a ruling on the pending motions to quash and to condemn. Nevertheless, the interests served by the doctrine of prior exclusive jurisdiction do inform this Court's view that reassignment offers the most orderly and efficient path for resolving the present disputes. See Palmer v. Texas, 212 U.S. 118, 129 (1909) (describing the doctrine as "essential to the orderly administration of justice"); First Charter Land Corp. v. Fitzgerald, 643 F.2d 1011, 1014 (4th Cir. 1981) (stating that the doctrine "forecloses unseemly and inefficient power struggles" and avoids

"inconsistent adjudication[s]"); Brunner v. 19 Parker Bros. Shotguns, Civ. A. No. 18-909, 2018 WL 5839384, at *2 (E.D. Va. Nov. 6, 2018) (explaining that the doctrine "prevent[s] the logical and practical difficulty of two courts simultaneously vying for possession or control of the same property") (quotation omitted)).

Plaintiffs are correct that the risk of inconsistent judgments has been reduced by the parties' agreement to stay the Forfeiture Action until the pending motions to quash and to condemn have been resolved. See Pls.' Opp'n at 11. But it is not inconceivable that the undersigned judge and Judge Boasberg might reach different conclusions about the propriety of the writs or other associated issues, or that competing judgments could prejudice the government, Wells Fargo, and even Plaintiffs. For example, as the government points out, Plaintiffs could be prejudiced "were a Levin court to order Wells Fargo to turn over the Funds to the Levin Plaintiffs" before this Court granted Plaintiffs' motion to condemn. See Gov't's Reply at 2. While Plaintiffs might be able to protect their interests by intervening in the Levin actions or seeking to stay those actions pending appellate review, that would generate other efficiency concerns.

The government has also stated—albeit in broad strokes—that, even if Plaintiffs' writs are upheld and their motion to condemn is granted, the government still "intends to present in the Forfeiture Action" additional standing-related arguments that "its forfeiture interest trumps Plaintiffs' after-acquired interest." Id. at 7 n.3. This creates at least the chance of another intertwined dispute between this proceeding and the Forfeiture Action down the line. With that possibility in mind, the Court finds that severance and reassignment will reduce the likelihood of inconsistent judgments and streamline the resolution of all Funds-related disputes. See Wildearth Guardians v. U.S. Bureau of Land Mgmt., 922 F. Supp. 2d 51, 55 (D.D.C. 2013) (transferring case where allowing two "very similar" cases to go forward in different fora "would create the

possibility for conflicting judgments"); <u>21 srl v. Enable Holdings, Inc.</u>, 2009 WL 4884177, at *2 (N.D. Ill. Dec. 9, 2009) (reassigning case where "handling of both cases by the same judge [wa]s likely to result in a substantial saving of judicial time and effort" and "avoid[] potentially inconsistent rulings").

### C.    Undue Delay & Prejudice

Plaintiffs' principal objection is that reassignment will "delay ultimate resolution of the issues presented" in the motions to quash and to condemn, which are now fully briefed.  Pls.' Opp'n at 11.  To be sure, this Court acknowledges that reassignment will cause some immediate delay to Plaintiffs' cases, given that the relevant briefing in the DDC <u>Levin</u> Action will not conclude until February 26, 2021 and the status of the SDNY <u>Levin</u> Action is not yet known.  <u>See</u> <u>DDC Levin Action</u>, Min. Order (Dec. 10, 2020).  Nonetheless, this delay appears relatively modest in length, and reassignment may ultimately speed up the final resolution of competing claims to the Funds by coordinating them before a single judge and consolidating issues for appeal.  <u>See In</u> <u>re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litig.</u>, 543 F. Supp. 2d 1373, 1374 (J.P.M.L. 2004) (transferring case over plaintiffs' undue-delay objections where transfer would ultimately ensure proceedings were "conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties."); <u>see also</u> <u>Int'l Union, United Mine Workers of America v. CONSOL Energy Inc.</u>, Civ. A. No. 20-1475 (CJN), 2020 WL 7042815, at *4 (D.D.C. Dec. 1, 2020) (concluding that "some degree of delay and additional expense" associated with transfer "does not necessarily constitute undue prejudice," particularly where transfer may "facilitate the speedy remainder of the proceedings" (quotation omitted)).

Plaintiffs also argue that "[f]airness demands adherence" to the parties' original agreement

to litigate the pending motions to quash and to condemn before this Court.  See Pls.' Opp'n at 12.  But, as the government persuasively explains, the Levin actions had not yet been filed when the parties made that agreement in July, and now that competing claims to the Funds exist across multiple actions, the benefits of formal coordination have become more pronounced.  See Gov't's Reply at 5–6.  The parties even contemplated that such a need to deviate from their agreement might arise.  See Joint Status Report (July 10, 2020) ("Should any Party believe that changed circumstances necessitate disturbing this agreement, that Party will promptly notify the other Parties and the Court.").  The government has not sought to lift the stay on the Forfeiture Action, and although Plaintiffs characterize the government's request as unfair, they do not identify any actual prejudice that would result to their cases.  Hence, the Court finds that the benefits of reassignment, discussed above, outweigh any short-term delays in resolving the pending motions to quash and to condemn.

## Conclusion

For the foregoing reasons, the Court will grant the United States' Motion to Sever and Reassign.  A separate order will issue on this date.


                                                    /s/
                                          JOHN D. BATES
                                     United States District Judge

Dated: January 14, 2021